1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    MIRLEY ADRIANA BAUTISTA PICO, et          Case No.  25-cv-8002 JST (JSC)
     al.,
8                                              **ORDER GRANTING TEMPORARY**
                   Petitioners,                **RESTRAINING ORDER**
9
           v.                                  Re: Dkt. No. 3
10
     SERGIO ALBARRAN, et al.,
11
                   Respondents.
12

13          Before the Court is Petitioners' *Ex Parte* Motion for Temporary Restraining Order. (Dkt.

14   No. 3.)  On September 19, 2025, Petitioners filed a Petition for Writ of Habeas Corpus, and an *Ex*

15   *Parte* Motion for Temporary Restraining Order, against Respondents Field Office Director Sergio

16   Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of

17   the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela

18   Bondi.  (Dkt. Nos. 2, 3.)  Petitioners ask this Court to (1) order their immediate release from

19   Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring

20   them out of this District or deporting them during the pendency of the underlying proceedings.

21   (*Id*.)  For the foregoing reasons, the TRO is GRANTED as modified below.

22   **I.      FACTUAL BACKGROUND**

23          Petitioners Mirley Adriana Bautista Pico (a woman from Columbia), Bingbing Mei Bing (a

24   woman from China), Heriberto Mosquera Sanchez (a man from Columbia), Marlon Antonio Sieza

25   Mendoza (a man from Nicaragua), and Harbans Singh (a man from India) all have pending

26   applications for asylum, withholding of removal, and protection under the Convention Against

27   Torture.  Each is presently in civil immigration detention at 630 Sansome Street, San Francisco.

28

United States District Court
Northern District of California

### A.    Ms. Bautista Pico

Ms. Bautista Pico fled Colombia and arrived in the United States in March 2024. United States immigration officials apprehended her at the border. They determined she posed little if any flight risk or danger to the community and released her into the community under 8 USC § 1226a to wait for her immigration court date. She thereafter moved to California. In November 2024, she applied for asylum, withholding of removal, and protection under the Convention Against Torture. She has complied with all of her ICE and immigration court obligations and has no criminal record at all. (Dkt. No. 2 ¶ 49.)

On September 19, 2025, Petitioner attended a hearing in San Francisco Immigration Court. At the hearing, the government moved orally to dismiss her case. (*Id*. at ¶ 50.) The presiding judge did not grant the motion; instead, he gave Petitioner time to respond to the motion and set a further hearing for December 12, 2025. (*Id.*).

### B.    Ms. Mei

Ms. Mei fled China and arrived in the United States in January 2024. United States immigration officials apprehended her at the border. They determined she posed little if any flight risk or danger to the community and released her into the community under 8 USC § 1226a to wait for her immigration court date. She thereafter moved to California. In July 2024, she applied for asylum, withholding of removal, and protection under the Convention Against Torture. She has complied with all of her ICE and immigration court obligations and has no criminal record at all. (*Id.* ¶ 51.)

On September 19, 2025, Petitioner attended a hearing in San Francisco Immigration Court. (Dkt. No. 2 ¶ 52.) At the hearing, the government moved orally to dismiss her case. (*Id*.) The presiding judge did not grant the motion; instead, he gave Petitioner time to respond to the motion and set a further hearing for December 12, 2025. (*Id.*).

### C.    Mr. Mosquera Sanchez

Mr. Mosquera Sanchez fled Columbia and arrived in the United States in March 2024. United States immigration officials apprehended him at the border. They determined he posed little if any flight risk or danger to the community and released her into the community under 8

USC § 1226a to wait for her immigration court date. He thereafter moved to California. In September 2024, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. He has complied with all of his ICE and immigration court obligations and has no criminal record at all. (*Id.* ¶ 53.)

On September 19, 2025, Petitioner attended a hearing in San Francisco Immigration Court. (Dkt. No. 2 ¶ 54.)  At the hearing, the government moved orally to dismiss his case.  (*Id.*)  The presiding judge did not grant the motion; instead, he gave Petitioner time to respond to the motion and set a further hearing for December 12, 2025.  (*Id.*).

### D.    Mr. Sieza Mendoza

Mr. Sieza Mendoza fled Nicaragua and arrived in the United States in December 2023. United States immigration officials apprehended him at the border. They determined he posed little if any flight risk or danger to the community and released her into the community under 8 USC § 1226a to wait for her immigration court date. He thereafter moved to California. In November 2024, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. He has complied with all of his ICE and immigration court obligations and has no criminal record at all. (*Id.* ¶ 55.)

On September 19, 2025, Petitioner attended a hearing in San Francisco Immigration Court. (Dkt. No. 2 ¶ 56.)  At the hearing, the government moved orally to dismiss his case.  (*Id.*)  The presiding judge did not grant the motion; instead, he gave Petitioner time to respond to the motion and set a further hearing for December 12, 2025.  (*Id.*)

### E.    Mr. Singh

Mr. Singh fled India and arrived in the United States in April 2024. United States immigration officials apprehended him at the border. They determined he posed little if any flight risk or danger to the community and released her into the community under 8 USC § 1226a to wait for her immigration court date. He thereafter moved to California. In July 2024, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. He has complied with all of his ICE and immigration court obligations and has no criminal record at all. (*Id.* ¶ 57.)

1    On September 19, 2025, Petitioner attended a hearing in San Francisco Immigration Court.

2    (Dkt. No. 2 ¶ 58.)  At the hearing, the government moved orally to dismiss her case.  (*Id.*)  The

3    presiding judge did not grant the motion; instead, he gave Petitioner time to respond to the motion

4    and set a further hearing for mid-December, 2025.  (Dkt. No. 3-2 at 2.)

5    **II.    LEGAL STANDARD**

6    In the temporary restraining order motion, Petitioners contend that their arrest and

7    detention violate the Due Process Clause of the Fifth Amendment, both substantively (because

8    Respondents allegedly have no valid interest in detaining any of them) and procedurally (because

9    they were not provided with a pre-detention bond hearing).

10    The standard for issuing a temporary restraining order is substantially identical to the

11    standard for issuing a preliminary injunction.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th

12    Cir. 2017).  Thus, a party seeking a temporary restraining order must establish "[1] that he is likely

13    to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

14    preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

15    the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

16    "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser

17    showing than likelihood of success on the merits – then a preliminary injunction may still issue if

18    the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are

19    satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up)

20    (emphasis in original).  "[W]hen the Government is the opposing party," the final two factors

21    "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

22    An injunction is a matter of equitable discretion and is "an extraordinary remedy that may

23    only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555

24    U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing

25    irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no

26    longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting

27    *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

28    423, 439 (1974)).

United States District Court
Northern District of California

### III.    DISCUSSION

As a preliminary matter, the Court finds the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case.  Petitioner's counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.  *See* Fed. R. Civ. P. 65(b)(1)(A).  Additionally, counsel states that she attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on September 19, 2025, and provided a copy of Petitioner's habeas petition by email on September 19, 2025.  (Dkt. No. 3-3 at 2); *see also* Fed. R. Civ. P. 65(b)(1)(B).

Each Petitioner has demonstrated a likelihood of success on the merits of each Petitioner's claim that her/his ongoing detention violates her/his procedural due process rights under the Fifth Amendment.  Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention.  *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).  The Court is aware of the recent and (non-binding) decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2020 (B.I.A. 2025) and it does not alter the Court's conclusion that Petitioners have demonstrated a likelihood of success or at least serious questions going to the merits.

Each Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief.  The likely unconstitutional deprivation of liberty that each Petitioner faces is an immediate and irreparable harm.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).  "[I]t follows inexorably from [the] conclusion" that each Petitioner's detention without a hearing is "likely unconstitutional" that she/he has "also carried their burden as to irreparable harm."  *Hernandez*, 872 F.3d at 995.

1    The final two *Winter* factors, the balance of the equities and public interest, also weigh

2  heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding

3  procedural protections against unlawful detention, and the Ninth Circuit has recognized that the

4  costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-

5  01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see also Melendres*,

6  695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's

7  constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir.

8  2005) ("Generally, public interest concerns are implicated when a constitutional right has been

9  violated, because all citizens have a stake in upholding the Constitution.").  As other courts in this

10  District and others have concluded under similar circumstances, "the potential harm to

11  [Petitioners] is significant, while the potential harm to the government is minimal." *Pablo Sequen*,

12  2025 WL 2203419, at *3.  At most, the government faces a short delay in detaining each

13  Petitioner if it ultimately demonstrates, by clear and convincing evidence, that detention of each is

14  necessary to prevent danger to the community or flight.  *See Jorge M. F.*, 2021 WL 783561, at *3;

15  *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  The

16  government is not "harmed in any legally cognizable sense by being enjoined from constitutional

17  violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with

18  "a conflict between [administrative] concerns and preventable human suffering, [the Court has]

19  little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor."

20  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

21    A TRO immediately releasing all five Petitioners is appropriate to return them to the status

22  quo.  *E. Bay Sanctuary Covenant*, 932 F.3d at 779.  The status quo refers to "the last uncontested

23  status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D.

24  Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).

25  That is the moment prior to each Petitioner's likely illegal detention.  *See Kuzmenko v. Phillips*,

26  No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary

27  restraining order requiring immediate release of the petitioner back to home confinement from

28  custody, as a restoration of the status quo).

1    Because each Petitioner satisfies all requirements for temporary injunctive relief and such

2    relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.  This

3    Order accords with many other recent grants of temporary relief in similar circumstances.  *See,*

4    *e.g.*, *Hinestroza v. Kaiser*, No. 25-CV-07559-JD, 2025 WL 2606983, at *2 (N.D. Cal. Sept. 9,

5    2025); *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025)

6    (granting temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at

7    *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum

8    seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10

9    (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664,

10   at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL

11   1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention

12   of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at

13   *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing

14   before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-

15   4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

16   Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

17   bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

18   conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is

19   needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

20   hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

21   **IV.   ORDER**

22   For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioners' Motion for

23   Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing

24   and a hearing on this matter.  Respondents are **ORDERED** to immediately release each Petitioner

25   from Respondents' custody and are **ENJOINED AND RESTRAINED** from re-detaining each

26   Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from

27

28

1    removing each Petitioner from the United States.[1]  This Order shall remain in effect until October

2    3, 2025.

3         The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this

4    Order SHALL be served on Respondents such that they receive actual notice as soon as

5    practicable, and Petitioner shall file proof of such service by no later than Monday, September 22,

6    2025.  Respondents shall provide a status report confirming each Petitioner's release by the same

7    date.

8         Respondents are **ORDERED TO SHOW CAUSE** in person at a hearing in the courtroom

9    of the Honorable Jon Tigar, on October 2, 2025 at 2:00 p.m., on why a preliminary injunction

10   should not issue.  Respondents shall file a response to Petitioner's motion by no later than

11   September 26, 2025.  Any reply shall be filed by noon on September 30, 2025.

12        This Order disposes of  Re: Dkt. No. 3.

13        **IT IS SO ORDERED.**

14   Dated: September 19, 2025 at 4:40 p.m.

15

16

17                                          JACQUELINE SCOTT CORLEY
                                            United States District Judge

18

19

20

21

22

23

24

25
     _____
26   [1] Petitioners also ask the Court to order that they remain within the Northern District of California
     in order to preserve this Court's jurisdiction, but it is well-established that "when the Government
27   moves a habeas petitioner after she properly files a petition naming her immediate custodian, the
     District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction
28   who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426,
     441 (2004).

United States District Court
Northern District of California